IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GAIL R. DION, | Case No. CV-05-43-S-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| PARMA SCHOOL DIST. #137 and JAMES NORTON, Superintendent of Parma School Dist. #137, in his Official Capacity, | |
| Defendants. | |

## INTRODUCTION

The Court has before it Defendants' Motion for Summary Judgment (Docket No. 42). The Court heard oral argument on the motion on January 11, 2006 and now issues the following decision.

## BACKGROUND

Plaintiff Gail Dion filed a complaint against Parma School Dist. #137 and James Norton, Superintendent of Parma School Dist. #37 (collectively "Defendants") asserting claims for discrimination based on Dion's disability. Initially, Dion made several discrimination claims, including claims that

**Memorandum Decision and Order - 1**

Defendants failed to hire her for a number of positions, paid her a lower wage as a substitute custodian, checked her time cards and terminated her as a substitute custodian. However, at the hearing on this matter, Dion conceded that her claims are now limited to Defendants' refusal to hire her for a full-time custodial position in March 2004, and her termination as a substitute custodian.

In defense of their decision not to hire Dion for the March 2004 position, Defendants initially asserted that Dion did not apply for the position. However, at oral argument, Defendants stated that they did, in fact, consider Dion for the position, but they did not hire her because they hired a more qualified applicant. As for terminating Dion, Defendants assert that they terminated her as a substitute custodian for budgetary reasons and as part of a process of streamlining the school district's custodial program.

At the conclusion of the hearing, the parties agreed that it would be best for the Court to review a complete set of the depositions in this matter before ruling on the pending motion. To that end, the Court overruled Defendants' objection to the admission of certain deposition testimony, and asked the parties to provide the Court with a copy of all relevant depositions. The parties agreed that Defendants would submit the depositions to the Court, which they did. After reviewing the deposition testimony, the Court has determined, based on the following analysis,

**Memorandum Decision and Order - 2**

that Defendants' Motion for Summary Judgment must be granted in part and denied in part.

## ANALYSIS

This case involves discrimination claims by Dion based on the Idaho Human Rights Act ("IHRA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act of 1973. Defendants seek summary judgment against Dion on all three causes of action. Summary judgment must be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### I.   ADA AND IHRA CLAIMS

Both parties suggest that the same factual allegations and standard of proof apply to both the IHRA claim and the ADA claim. The Court agrees, and will consider the claims together.

To survive summary judgment, an ADA plaintiff must first establish a prima facie case of discrimination. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 50, n.3 (2003). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *See* Id. If the employer meets

**Memorandum Decision and Order - 3**

its burden, presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by demonstrating that the employer's explanation is pretextual.  *See Id.* at 52.

In this case, the parties agree that Dion has met her initial burden of alleging a prima facie case.  That is, Dion has shown that she is a qualified individual with a disability who suffered adverse employment action at the hands of the Defendants. *See Sanders v. Arneson Products, Inc.*, 91 F.3d 1351, 1353 (9th Cir. 1996).  The next question, then, is whether Defendants have met their burden of providing evidence of a legitimate non-discriminatory reason for its two alleged discriminatory actions –  failure to hire Dion for the March 2004 position and terminating Dion as a substitute custodian.

> A. **March 2004 Position**

Defendants assert that they did not hire Dion for the March 2004 position because they hired a more qualified individual, Jo McKee, for the position. Clearly, an opinion that an applicant is less qualified for a job than other applicants can be a legitimate nondiscriminatory reason for refusing to hire a member of a protected class.  The Fourth Circuit Court of Appeals, referencing the Supreme Court's precedent setting case, *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 803 (1973), appropriately stated as follows:

**Memorandum Decision and Order - 4**

> Obviously it must be possible for employers legally to make employment decisions that disfavor qualified minority employees on the basis of a comparative evaluation of their qualifications with those of other applicants.  Concededly, when that evaluation is to any degree subjective and when the evaluators are themselves not members of the protected minority, the legitimacy and nondiscriminatory basis of the articulated reason for the decision may be subject to particularly close scrutiny by the trial judge.  But, as the Supreme Court pointed out in *McDonnell Douglas* itself, the mere fact that subjective criteria are involved in the reason articulated by an employer does not prevent according it sufficient rebuttal weight to dispel the inference of discrimination raised by the prima facia case.

*Page v. Bolger*, 645 F.2d 227, 230 (4th Cir. 1981).

In this case, the deposition testimony of Principal Michael Moore suggests that he did a comparative evaluation of Dion's qualifications with those of the other applicants.  Mr. Moore gave the following relevant testimony:

> Q. [Ms. Butler]: Just from the sounds of what you just said, it sounds like you did consider Gail [Dion] for that March 2004 position, even though you don't remember an application.  But you did consider her.  You did think about her as a possible candidate.  Is that correct?
>
> A. [Michael Moore]: Um-hmm.
>
> \* \* \*
>
> Q. [Ms. Butler]: Well, let me back up.  Did you put her [Dion] on your short list of recommended people for the district to consider to hire?
>
> A. [Michael Moore]: When I first looked at all of the applicants, or any of those applicants, if she were one of the candidates that we were looking at, we were open-minded in all of those.  We just looked at

**Memorandum Decision and Order - 5**

> the qualifications. There is a couple people we brought in just to sub to get a little feel for them. In fact, brought them in for a few weeks. We had already done that with Gail [Dion]. She had worked in the district for a while. Worked in the high school. So I knew what she was capable of doing. There were some others that came on board that we brought on for long-term subs to see what they were capable of doing. Based on what I observed, I felt those other people had more to offer. And that is my experience through the years of hiring a number of substitutes in a secondary setting.

(Deposition of Michael Moore, Dec 16, 2005, pp.21-23).

Mr. Moore further indicated that Dion was not the best candidate because he "didn't think her personality was something that would fit in a secondary setting." (Deposition of Michael Moore, Dec 16, 2005, p.26). Mr. Moore stated that "those [custodians] that do seem to work better are those who can assert themselves. Who is not afraid to walk into a group of kids. Confront them if there is issues. Those kinds of things." (Deposition of Michael Moore, Dec 16, 2005, p. 26). Mr. Moore "didn't sense her [Dion's] personality would do that." (Deposition of Michael Moore, Dec 16, 2005, p.26).

However, later in his testimony, Mr. Moore equivocated on whether he considered Dion an actual candidate for the March 2004 position. Mr. Moore testified as follows:

> Q. [Mr. Mickelsen]: You have stated earlier that you compared the qualifications of Ms. McKee and Ms. Dion and decided that Ms. McKee was, in fact, more qualified. Is that correct?

**Memorandum Decision and Order - 6**

> A. [Michael Moore]: That is after observing – I knew what Ms. Dion was capable of doing, because she subbed in the building for a while. And Jo McKee subbed in the building for a while. So I was aware of what she was capable of doing. And I chose one candidate, in my mind, over the other.
>
> Q. [Mr. Mickelsen]: So Ms. Dion was a candidate?
>
> A. [Michael Moore]: Well, I didn't say that. I said I observed her earlier working in the building, so I knew what she was capable of doing. Now, she could have been a candidate in my mind. . . .

(Deposition of Michael Moore, Dec 16, 2005, pp.34-35).

Similarly, Mr. Norton, the Superintendent of the School District, stated that from his point of view, he did not know how Dion could have been eligible for the March 2004 position "based on the fact that she has verbally stated . . . that she can only work part time." (Deposition of James Norton, Dec. 16, 2005, p.46). In fact, although Mr. Norton testified that he did not know whether Dion was considered by the principals for the position, or whether they had her application (Deposition of James Norton, Dec. 16, 2005, p.46), he personally did not consider Dion an applicant. He testified as follows:

> Q. [Mr. Mickelsen]: So it is your contention then that she [Dion], to your knowledge, was simply not an applicant? But had she been there, and most qualified, she would have been hired?
>
> A. [James Norton]: Certainly.
>
> * * *
>
> Q. [Mr. Mickelsen]: And it is your position that, to your knowledge,

**Memorandum Decision and Order - 7**

>Ms. Dion did not, in fact, apply for these custodial positions. The December 2003 and March 2004?
>
>A. [James Norton]: That's correct.

The testimony of both Mr. Moore and Mr. Norton is confusing at best. Mr. Moore's testimony suggests that he did a comparative analysis of Dion's qualifications and the qualifications of other candidates, including Ms. McKee. However, that testimony is somewhat suspect considering the fact that neither Mr. Moore nor Mr. Norton could unequivocally state they considered Dion as a candidate for the March 2004 position.

Under these circumstances, the Court finds that Defendants have not met their burden of coming forward with evidence that their decision not to hire Dion was based upon a legitimate, nondiscriminatory reason. Moreover, even if the Court were to conclude that Defendants' burden is satisfied by their claim that they hired the more qualified individual, the fact that Defendants equivocate on whether they even considered Dion as a candidate is sufficient evidence of pretext to require that the motion for summary judgment be denied. *See Raytheon*, 540 U.S. at 50. Accordingly, the Court will deny Defendants summary judgment on Dion's ADA and IHRA claims as they relate to not hiring Dion for the March 2004 position.

    **B.**    **Termination**

**Memorandum Decision and Order - 8**

As to Dion's claim that Defendants improperly terminated her as a substitute custodian, Defendants assert that they terminated Dion due to budgetary and streamlining concerns. (Deposition of James Norton, Dec 16, 2005, pp. 80-86). Mr. Norton determined to utilize more full-time custodians instead of substitute custodians. (Deposition of James Norton, Dec 16, 2005, pp. 80-86). These are sufficient business interests that satisfy Defendants' burden of articulating legitimate non-discriminatory interests supporting the termination of an employee. The burden therefore shifts back to Dion to assert evidence of pretext. *See Raytheon*, 540 U.S. at 50.

Dion asserts that the close proximity in time between the budgetary and streamlining concerns that caused Defendants to use more full-time custodians and the decision to terminate Dion as a substitute custodian suggest pretext. "[T]iming of a termination can be significant, and with other evidence of pretext in an appropriate case may be persuasive to show pretext." *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1076 (9th Cir. 2004). In *Stegall*, the plaintiff, an on-air personality was terminated at a time when the defendant, a broadcasting company, was replacing all on-air personalities with new talent in an effort to increase ratings. *See Id.* Considering the wholesale changes at the broadcasting company, the court determined that the timing of the plaintiff's termination did not

**Memorandum Decision and Order - 9**

raise any genuine issue of fact on pretext by the employer.  *Id*.

The same holds true in this case.  The close proximity between the District's budgetary concerns, the decision to hire more full-time custodians, and the elimination of Dion's substitute position, were part and parcel of an over-all desire to streamline the School District's operations.  Far from suggesting pretext, the timing of the School District's action are entirely consistent with the stated reason for the termination.  For that reason, the timing of Dion's termination, without other evidence of pretext, is not enough to raise a genuine issue of fact as to whether the stated reason was pretextual.  Thus, the Court will grant Defendants' summary judgment motion on Dion's ADA and IHRA claims as they relate to Dion's termination.

**II.     REHABILITATION ACT CLAIM**

With respect to Dion's Rehabilitation Act claim, the Ninth Circuit has stated that the remedies, procedures, and rights set forth in the Rehabilitation Act shall be the remedies, procedures, and rights applicable to ADA claims.  *See Zukle v. Regents of the University of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

In this case, the factual allegations in Dion's Rehabilitation Act claim track with her ADA and IHRA claims.  Therefore, the Court will also deny Defendants

**Memorandum Decision and Order - 10**

summary judgment on Dion's Rehabilitation Act claim as it relates to hiring her for the March 2004 position and grant the motion as it relates to her termination.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 42) shall be, and the same is hereby, GRANTED in part and DENIED in part.  The motion is granted as it relates to Dion's claims regarding her termination and denied as it relates to Dion's claims regarding Defendants' failure to hire her for the March 2004 position.



DATED:  **March 9, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - 11**